Duane **WRIGHT**, Plaintiff,

v.

Dennis **BAKER**, et al., Defendants.

No. 5:93 CV 0941.

United States District Court, N.D. Ohio, E.D.

March 3, 1994.

Bruce Comly French, Lima, OH, for plaintiff.

Timothy J. Mangan, Office of the Atty. Gen., Columbus, OH and Christian B. Stegeman, Crim. Justice Dept., Office of the Atty. Gen., Cincinnati, OH, for defendants.

## MEMORANDUM OPINION

DOWD, District Judge.

(Disposing of Docket Nos. 28 and 31)

Before the Court are cross motions for summary judgment (Defendants' motion—Docket No. 28; Plaintiff's motion—Docket No. 31). For the reasons discussed below, defendants' motion is granted and plaintiff's motion is denied.

### I. BACKGROUND

Plaintiff filed this lawsuit on May 3, 1993 against Dennis Baker, the Warden of Mansfield Correctional Institution ("ManCI"), and Reginald A. Wilkinson, the Director of the Ohio Department of Rehabilitation and Corrections.[1] The complaint, as subsequently amended,[2] set forth two counts, both brought pursuant to 42 U.S.C. § 1983.[3]

---

1. Plaintiff subsequently amended the complaint to add as a defendant the Ohio Adult Parole Authority. *See* Docket No. 20. Upon motion, this defendant was dismissed with prejudice on November 18, 1993. *See* Docket No. 27.

2. *See* Docket No. 20.

The first count of the amended complaint arises from plaintiff's conviction in Allen County Court of Common Pleas on one felony count of grand theft and one misdemeanor count of assault. The state court judge sentenced plaintiff on these two convictions in the following language:

Count 1 [Grand Theft]—Two years;

Count 2 [Assault]—180 days Allen County Jail; Defendant shall receive 73 days credit on Count 2; Count 2 shall run concurrent to Count One.

*See* Judgment Entry on Sentencing, attached to the Complaint (Docket No. 1). Plaintiff asserts that he was entitled to receive a 73-day credit against his grand theft conviction, but that defendants refused to give it to him, resulting in his having been unlawfully detained for that number of days. This, plaintiff asserts, is a violation of his Fourteenth Amendment due process rights.

In the second count of the amended complaint plaintiff alleges that, during the time he was allegedly unlawfully detained, he was exposed to tuberculosis by way of his contact with another inmate who was an "active tuberculosis converter." Plaintiff alleges that this violated his rights under the Eighth Amendment.

### II. SUMMARY JUDGMENT STANDARD

■ Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. When considering a motion for summary judgment, "the inferences to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962). *See, e.g. U.S. v. Hodges X–Ray, Inc.,*

---

3. 42 U.S.C. § 1983 provides a cause of action for anyone who has been deprived of federally protected rights, privileges or immunities by a person acting under color of state law.

759 F.2d 557, 562 (6th Cir.1985) and cases cited therein. The Court's favorable treatment of facts and inferences, however, does not relieve the nonmoving party of the responsibility "to go beyond the pleadings" to oppose an otherwise properly supported motion for summary judgment under Rule 56(e). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

■ Once the moving party satisfies his or her burden to show an absence of evidence to support the nonmoving party's case, *Celotex Corp. v. Catrett,* 477 U.S. at 323, 106 S.Ct. at 2552, the party in opposition "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Although the showing required of the nonmoving party by Rule 56 does not go so far as to require that all opposition evidence be in a form admissible at trial, the rule does require the nonmoving party who has the burden of proof at trial to oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves...." *Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. at 2553. General averments or conclusory allegations of an affidavit, however, do not create specific fact disputes for summary judgment purposes. *See Lujan v. National Wildlife Federation,* 497 U.S. 871, 888–89, 110 S.Ct. 3177, 3188–89, 111 L.Ed.2d 695 (1990). Furthermore, unsworn statements and affidavits composed of hearsay and non-expert opinion evidence, "do not satisfy Rule 56(e) and must be disregarded." *See Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 968–69 (6th Cir.1991) (quoting *State Mutual Life Assurance Co. v. Deer Creek Park,* 612 F.2d 259, 264 (6th Cir.1979) and citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158 n. 17, 90 S.Ct. 1598, 1608–09 n. 17, 26 L.Ed.2d 142 (1970)). Nor may a party "create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts ... earlier deposition testimony." *Reid v. Sears Roebuck & Co.,* 790 F.2d 453, 460 (6th Cir.1986) (citing *Biechele v. Cedar Point, Inc.,* 747 F.2d 209, 215 (6th Cir.1984)).

■ On a motion for summary judgment, the Court will consider "[o]nly disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510. Non-material facts will not be considered. Neither will the judge attempt to weigh the material evidence or determine its truth. *Anderson v. Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. at 2510–11. The judge's sole function will be to determine whether there is a genuine issue for trial such that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* (citations omitted).

■ Where the nonmoving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. at 323, 106 S.Ct. at 2549 (equating the standard for a directed verdict under Rule 50(a) with the summary judgment standard of Rule 56). If the evidence is "merely colorable," or is "not significantly probative," the Court may decide the legal issue and grant summary judgment. *Anderson v. Liberty Lobby,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citing *Dombrowski v. Eastland,* 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967) (*per curiam*) and *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)). " 'The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.' " *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir.1989) (quoting *Anderson v. Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512).

In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby,* 477 U.S. at 250, 106 S.Ct. at 2511.

## III. DISCUSSION

### A. Count One of the Amended Complaint

 Plaintiff asserts that he was unlawfully detained when the defendants refused to apply a 73–day credit to his grand theft sentence. Defendants argue that the sentencing document was unambiguous on its face, applying the 73–day credit only to the assault charge. Defendants further state that, although not required to do so, the Records Office at ManCI contacted the sentencing court to inquire what, if any, credit was to be applied to the felony sentence. The sentencing court confirmed that the felony conviction did not include any credit. (Affidavit of David Leo Studer, ¶ 6).[4]

> The law has been and is still clear that, although the Adult Parole Authority is the body who credits the time served [under O.R.C. § 2967.191], it is the sentencing court who makes the determination as to the amount of time served by the prisoners before being sentenced to imprisonment in a facility under the supervision of the Adult Parole Authority.

*State, ex rel. Corder v. Wilson,* 68 Ohio App.3d 567, 572, 589 N.E.2d 113, 116–18, *motion to certify overruled,* 62 Ohio St.3d 1484, 581 N.E.2d 1391 (1991). "There is simply no statutory provision conferring a right upon the Adult Parole Authority to ignore the trial court determination of the number of days and to substitute its own in complying the mandate in R.C. 2967.191." *Id.* 68 Ohio App.3d at 573, 589 N.E.2d at 117–18. While there is a possibility of an error in the sentencing court's computation, "the proper remedy is either direct appeal or a motion for correction by the trial court, if it be a mistake rather than an allegedly erroneous legal determination." *Id.*

In essence, plaintiff seeks a ruling from this Court that the sentence imposed was unlawful and that he is, therefore, entitled to damages.[5] Plaintiff seeks this relief under 42 U.S.C. § 1983. However, the proper avenue of relief would have been an appeal or a motion for correction, followed by a petition for writ of habeas corpus under 28 U.S.C. § 2254 if no relief was forthcoming from the state proceedings. Having failed to exhaust his state court remedies, plaintiff is barred from pursuing a collateral attack under the auspices of a Section 1983 action. *See Preiser v. Rodriguez,* 411 U.S. 475, 489, 93 S.Ct. 1827, 1836, 36 L.Ed.2d 439 (1973).

Although *Preiser* would not ordinarily require exhaustion of remedies prior to bringing a Section 1983 action for damages, the Sixth Circuit has held that a federal court must "stay its hand where disposition of the damage action would involve a ruling implying that a state conviction [or sentence] is or would be illegal." *Hadley v. Werner,* 753 F.2d 514, 515 (6th Cir.1985); *accord Jones v. Shankland,* 800 F.2d 77, 81–83 (6th Cir.1986), *cert. denied,* 481 U.S. 1048, 107 S.Ct. 2177, 95 L.Ed.2d 834 (1987).

 There can be but one conclusion here: defendants Baker and Wilkinson, who are not responsible for crediting time in any event, cannot be held liable in damages for simply carrying out the mandate of the sentencing court.

Accordingly, defendants are entitled to summary judgment on Count One of the Amended Complaint and the same is granted.

### B. Count Two of the Amended Complaint

 In Count Two of the Amended Complaint, plaintiff asserts an Eighth Amendment violation. He alleges that, during the "additional" days which he served as an inmate, he was exposed to "an active tuberculosis converter" who "worked in food service." (Amended Complaint, ¶¶ 10, 15). The factual allegation is made "upon information and belief." (Amended Complaint, ¶ 10).[6]

---

4. Studer is the Correctional Record Manager at ManCI. Aff., ¶ 1. In October of 1992, Studer personally reviewed plaintiff's file to determine if he was due any credit. Aff., ¶ 4.

5. Plaintiff is not seeking release because he has already served the full sentence.

6. Both the Amended Complaint and plaintiff's Motion for Summary Judgment appear to link this alleged wrongful exposure to the claim that plaintiff was detained too long. In essence, this is just a "spin-off" of the first count. Plaintiff alleges that, *had he not been detained longer than required by his sentence,* he would not have been exposed to the tuberculosis. The Court reads

"In order to state a cognizable claim [under the Eighth Amendment], a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). "[I]n the medical context, an inadvertent failure ... cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Id.* at 105–106, 97 S.Ct. at 291–92 (quoting *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976) and *Palko v. Connecticut,* 302 U.S. 319, 323, 58 S.Ct. 149, 150–51, 82 L.Ed. 288 (1937)).

Plaintiff is unable to meet the standards set forth to make out a claim of deliberate indifference to his serious medical needs.

Brian Cain, a registered nurse who serves as the Health Care Administrator at ManCI, testified that inmates are tested for tuberculosis ("TB") when they enter the system and yearly thereafter. (Cain Depo., at 11). At the yearly test, inmates who have not previously tested positive for exposure to TB are given the typical skin test.[7] (*Id.*). Any inmate who tests positive on the skin test is given a chest X-ray and prophylactic medication.[8] (*Id.* at 12, 20–21). If an inmate were to have active TB, the inmate would be immediately isolated in a special cell,[9] placed on a regimen of medicine, and forthwith sent to the medical facility at Ohio State University for further diagnosis and treatment. (*Id.* at 22–23). Cain testified that, in the five years or so that he had held his position, no inmate had required this treatment. (*Id.* at 6, 23).

Cain further testified that, in October of 1992, an inmate (apparently the one about whom plaintiff complains) presented himself to the health unit with a temperature of 103 degrees and a complaint of recent weight loss. The inmate was sent to the medical facility at Ohio State University and was subsequently diagnosed as HIV positive. He was also diagnosed at that time as having tuberculosis. (Cain Depo., at 14–15). The inmate has not returned to the prison. (*Id.* at 17).

At his deposition, plaintiff admitted that neither Wilkinson nor Baker nor any other prison official knew, prior to this diagnosis, that the inmate had developed tuberculosis. (Wright Depo. at 91, 96–97). Wright admits that when he was tested after the discovery that the inmate had tuberculosis, he tested negative. (Wright Depo., at 82, 89). This means that Wright was not even exposed to tuberculosis, that is, that he apparently had not come in contact with the particular inmate who was ill.[10] Wright admits that he has no reason to believe that he has tuberculosis. (*Id.* at 83, 89).

Plaintiff relies considerably on the recent Supreme Court case of *Helling v. McKinney,* —— U.S. ——, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). The reliance is not well-placed.

In *Helling,* a prisoner brought a Section 1983 action against prison officials claiming that involuntary exposure to his cellmate's environmental tobacco smoke ("ETS") created an unreasonable risk to his health, thus subjecting him to cruel and unusual punishment.[11] The Supreme Court affirmed the

---

this as just another version of a wrongful detention claim, rather than a complaint regarding the alleged exposure *per se.* However, since the Court has already determined that plaintiff's first count has no merit, the second count will be considered without the added "detained-too-long" spin, that is, the Court will simply consider whether plaintiff's alleged exposure to an inmate with active tuberculosis constituted cruel and unusual punishment.

**7.** Those who had previously tested positive are given chest X-rays.

**8.** Testing positive indicates not that you have TB, but that you have at some time been exposed to

it. (Cain Depo., at 12). Since TB is an "opportunistic" disease, if the immune system of a person who has been exposed to the disease is compromised, that person is likely to develop TB. (*Id.* at 14).

**9.** These cells are specially constructed to have negative airflow.

**10.** In his deposition, Wright could supply no factual support for his allegation that he was exposed to the tuberculosis because the inmate worked in food service. (Wright Depo., at 90).

**11.** The prisoner was housed with a cellmate who smoked five (5) packs of cigarettes each day.

remand by the Court of Appeals to the district court to permit the prisoner an opportunity to prove his case.[12]

The prison officials in *Helling* relied on the fact that the prisoner was unable to show any current health problems resulting from his exposure to ETS. The Supreme Court stated that it could not "hold that prison officials may be deliberately indifferent to the exposure of inmates to a serious, communicable disease on the ground that the complaining inmate shows no serious current symptoms." *Helling v. McKinney,* —— U.S. at ——, 113 S.Ct. at 2480.

The facts in the instant case are not even close to those in *Helling.* In *Helling,* there was no question that the prisoner was exposed to ETS. The question was whether he could show "both the subjective and objective elements necessary to prove an Eighth Amendment violation." *Helling v. McKinney,* —— U.S. at ——, 113 S.Ct. at 2481–2482. Relevant to the objective element would be the question of whether the prisoner endured unreasonably high exposure which society would consider violative of contemporary standards of decency. Relevant to the subjective element was the question of whether the prison official had exhibited deliberate indifference as regards the dangers of any such exposure.

In the instant case, Wright admits that he has tested negative for exposure to TB and has no reason to believe he has the disease.[13] Thus, unlike the *Helling* case, there simply is no exposure in the instant case. Wright cannot have suffered even potential, much less actual, injury.[14]

Furthermore, even if Wright had tested positive for exposure, he cannot show that the prison officials, much less Baker and Wilkinson personally, knew that an inmate had TB and failed to act on that knowledge, in violation of plaintiff's Eighth Amendment rights. In fact, the inmate was not diagnosed with TB until after he had left the prison and, once diagnosed, he was not returned to the prison.[15]

In this case, prison officials had appropriate policies in place and followed them. There is no evidence that there is any policy of ignoring the potential dangers of exposure to infectious diseases such as TB. There is simply no evidence of deliberate indifference to serious medical needs. The fact that plaintiff might have been exposed, along with others, to an inmate who was later discovered to have TB is not enough to show an Eighth Amendment claim; there must be deliberate indifference.

Under these facts, defendants are entitled to summary judgment on Count Two of the Amended Complaint and the same is granted.

### III. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (Docket No. 28) is granted and plaintiff's motion for summary judgment (Docket No. 31) is denied.

IT IS SO ORDERED.

---

12. The case had been disposed of on the prison officials' motion for directed verdict.

13. Wright's deposition testimony that he "go[es] through life ... not knowing whether I might have it [TB] someday ...," is without foundation. He cannot develop TB if he has not been exposed to the virus that causes the disease. Since he was not exposed to the TB virus while in prison, as evidenced by the negative skin test, if he does develop TB later on, it could only be because of a later (post-prison) exposure for which these defendants cannot be liable.

14. Wright is no longer in prison so there is no danger of continued exposure. Furthermore, the inmate with TB is also no longer at the prison.

15. By noting that the diagnosis was not made until after the inmate left the prison, the Court is not suggesting that he did not have TB while at the prison. However, the timing of the diagnosis is relevant to the issue of defendants' lack of knowledge that any inmate had active TB.