77 F.3d 482
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Anthony MILLER-BEY, Plaintiff-Appellant,
v.
Lt. Gregory SCHULTZ; Richard Friend; Donald Stephenson;
and Patrick Cannon, Defendants-Appellees.
 No. 94-1583.
 United States Court of Appeals, Sixth Circuit.
 Feb. 15, 1996.
 
 Before: BROWN, WELLFORD, and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff Anthony Miller-Bey, a prisoner, appeals the district court's[1] grant of judgment as a matter of law in favor of defendants Richard Friend, Donald Stephenson, Gregory Schultz, and Patrick Cannon in this civil rights action, brought under 42 U.S.C. § 1983, arising from the denial of plaintiff's religious documentation or "nationality" card by defendant prison officials. On appeal, the issue is whether the district court erred in granting defendants' motion for judgment as a matter of law under Federal Rule of Civil Procedure ("Fed.R.Civ.P.") 50(a). For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 On October 26, 1990, plaintiff Anthony Miller-Bey was transferred from the Alger Correctional Facility in Munising, Michigan, to the Standish Maximum Correctional Facility in Standish, Michigan. On the evening before plaintiff was transferred, two corrections officers packed plaintiff's property and a copy of a property receipt into a duffel bag and sealed the bag. At trial, plaintiff claimed that he informed the officers that he had a nationality card, issued by the Moorish Science Temple of America, in his pocket and asked if the card should be packed in his duffel bag. Plaintiff alleged that one of the officers examined the card and placed it back in plaintiff's pocket.
 
 
 3
 Before plaintiff was transferred to the Standish prison, he was strip searched pursuant to standard procedure. Plaintiff claimed that defendants Lieutenant Gregory Schultz, shift commander at the Alger Maximum Correctional Facility; Richard Friend, a corrections officer at Alger; and Donald Stephenson and Richard Patrick Cannon, transportation officers at Alger, were present while he was being searched. Plaintiff testified at the trial that he told defendants that he had his nationality card and the business card of Brother T. Foster-El, the Grand Mufti of the Moorish Science Temple of America, in his shirt pocket. Plaintiff claimed that defendant Friend took the nationality card out of plaintiff's pocket, showed it to defendant Stephenson, and then threw it in a garbage can. Plaintiff testified that he requested a property receipt for the card, but his request was refused. Plaintiff further testified that when he had previously been transferred from the Dunes Correctional Facility to the Michigan Reformatory and from the Michigan Reformatory to the Alger Correctional Facility, he was allowed to carry his nationality card with him.
 
 
 4
 At trial, plaintiff called William Parker-Bey, the Governor of Temple 25 of Detroit, Michigan and Grand Governor emeritus (retired) of all prison institutions, to testify about the tenets of the Moorish Science Temple of America religion and about the significance of a member's nationality card. Mr. Parker-Bey testified that a member of the Morrish Science Temple of America practices his religion by attending services, praying, reading the Koran, and living according to the five principles of love, truth, peace, freedom, and justice. Mr. Parker-Bey further explained that a person who wishes to join the Moorish Science Temple of America must attend services and complete a questionnaire. When someone joins the Moorish Science Temple of America, he is issued a nationality card by the leader of a Temple, either the Grand Shek or his deputy. The nationality card, which contains the names of the Prophets such as Mohammed, Buddha, and Confucius, states the member's name, the date of issuance, and the member's age. Mr. Parker-Bey testified that
 
 
 5
 [t]he function of that card is prove to the people ... that you come in contact with ... from where you came, you can present them this card and let them read it or you read it to them. And the Prophet issued [these cards] to the members of the Moorish Science Temple of America [to] tell us that this is your nationality card and your birth right for the Moorish Science Temple of America. When you show that, they know you belong to something and you find out on the card that it belongs to Moorish Science Temple of America.
 
 
 6
 ............................................................
 
 
 7
 ....................
 
 
 8
 * * *
 
 
 9
 [The card is] important to us in more than one way: To ... prove to the nation, world, that we are not negroes, colored people or Ethiopians.... And ... it proves that you know something about your nationality from which you come.
 
 
 10
 J.A. 65-66. Mr. Parker-Bey explained that carrying a nationality card is a part of practicing the Moorish Science Temple of America religion and that a member is supposed to carry his nationality card at all times. However, Mr. Parker-Bey testified that a member may still practice the religion of the Moorish Science Temple of America without a nationality card. In this regard, Mr. Parker-Bey conceded that the card was not necessary for a member to pray, read the Koran, or attend services. In fact, Mr. Parker-Bey explained that it is not unusual for a member to lose his nationality card and that when this occurs, the member need only request a replacement card. Furthermore, members who have lost their nationality cards do not lose their membership in the Moorish Science Temple of America before they receive their replacement cards.
 
 
 11
 Plaintiff testified that when defendants allegedly threw his nationality card in a garbage can, he
 
 
 12
 [f]elt violated and really humiliated and embarrassed. I felt hurt and I felt as though--even though I was in a vulnerable position, I felt as though I really [betrayed] my Prophet by letting them just take my nationality card because one thing the Prophet teaches us in the literature is to protect the Prophet and the Temple, meaning any and everything that has to do with the Moorish Science Temple of America.
 
 
 13
 J.A. 85 Plaintiff further testified that, although his nationality card had great sentimental value to him and represented a changing point in his life, he had not requested a replacement card because he did not want to order a replacement card through the mail, and he was unable to get one from a Grand Shek because he was in administrative segregation in the prison.
 
 B.
 
 14
 On January 24, 1991, plaintiff Anthony Miller-Bey filed a complaint pro se naming six defendants, including two unknown "John Does." On March 18, 1991, the district court partially dismissed the complaint against defendants Richard McKeon and John Fuller because plaintiff had failed to state a claim against these defendants. The district court also dismissed defendant Patrick Cannon because he was not properly served.
 
 
 15
 On June 28, 1991, defendants Friend, Stephenson, and Schultz filed a motion for dismissal or, alternatively, for summary judgment. On September 16, 1991, the magistrate judge issued a report recommending that defendants' motion be denied as to plaintiff's First Amendment claim but be granted as to plaintiff's retaliation and harassment claim. Although all parties filed objections to the report and recommendation, the district court adopted the report and recommendation on February 2, 1992.
 
 
 16
 On February 12, 1992, the district court appointed an attorney to represent plaintiff. On June 24, 1992, plaintiff filed an amended complaint in which he dropped the unknown "John Does" as defendants and added Patrick Cannon as a defendant. The amended complaint alleged that defendants' conduct violated plaintiff's right to equal protection under the Fourteenth Amendment of the Constitution of the United States and violated plaintiff's First Amendment right to free exercise of his religion.
 
 
 17
 On December 30, 1993, the district court referred this case, pursuant to the parties' consent, to a magistrate judge for trial. A jury trial commenced on April 19, 1994. At the close of plaintiff's proof, defendants made a motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a), and the magistrate judge granted the motion on the record, determining that defendants' denial of plaintiff's nationality card was not an impediment to the exercise of plaintiff's religion. A written order and judgment granting defendants' motion for directed verdict were entered on April 24, 1994.[2] This timely appeal followed.
 
 II.
 
 18
 Plaintiff argues that the magistrate judge erred in granting judgment as a matter of law in favor of defendants. "This court's standard of review of a motion for judgment as a matter of law is identical to the standard used by the district court." O'Brien v. City of Grand Rapids, 23 F.3d 990, 995 (6th Cir.1994). Under this standard, we "should not weigh the evidence, evaluate the credibility of witnesses, or substitute [our] judgment for that of the jury; rather, this court must view the evidence in the light most favorable to the party against whom the motion is made and give that party the benefit of all reasonable inferences." Id. Thus, we should affirm the district court's grant of a motion for judgment as a matter of law " 'if there is a complete absence of pleading or proof on an issue or issues material to the cause of action or where there are no controverted issues of fact upon which reasonable men could differ.' " Kitchen v. Chippewa Valley Sch., 825 F.2d 1004, 1015 (6th Cir.1987) (quoting Rockwell Int'l Corp. v. Regional Emergency Medical Servs. of N.W. Ohio, Inc., 688 F.2d 29, 31 (6th Cir.1982)).
 
 
 19
 Plaintiff asserts that the magistrate judge erred in failing to apply the standard of review of First Amendment free exercise claims set forth in the Religious Freedom Restoration Act of 1993 ("RFRA" or "the Act"), 42 U.S.C. § 2000bb et seq. When the magistrate judge granted defendants' motion for judgment as a matter of law, the magistrate judge found that plaintiff had failed to present any evidence that he was prevented from practicing his religion as a result of the destruction of his nationality card.
 
 The RFRA provides in relevant part
 
 20
 (a) In general
 
 
 21
 Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.
 
 
 22
 (b) Exception
 
 
 23
 Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person--
 
 
 24
 (1) is in furtherance of a compelling governmental interest; and
 
 
 25
 (2) is the least restrictive means of furthering that compelling governmental interest.
 
 
 26
 42 U.S.C. § 2000bb-1. Within the statute, Congress made clear that the purpose of the RFRA was to restore the compelling interest test as the standard of review of free exercise claims. See 42 U.S.C. § 2000bb(b).
 
 
 27
 In the RFRA's legislative history, Congress also made clear that the Act is to be applied to prisoners. See S.Rep. No. 111, 103rd Cong., 1st Sess. 9 (1993), reprinted in 1993 U.S.C.C.A.N. 1892, 1898-99. Consistent with the Act's legislative history, this court has held that the RFRA is applicable to prisoners and is applied retroactively. Abdur-Rahman v. Michigan Dep't of Corrections, 65 F.3d 489, 492 (6th Cir.1995) (order). Therefore, we must determine whether the magistrate judge erred in failing to analyze plaintiff's free exercise claim under the compelling interest standard contained in the RFRA. This court has recently held that "[n]ot all regulations affecting religious activity fall within the Act." Id. In Abdur-Rahman, we explained that "[o]nly regulations which substantially burden a prisoner's capacity to exercise his beliefs of faith are governed by the Act." Id. (emphasis in original) (citing Werner v. McCotter, 49 F.3d 1476, 1479 (10th Cir.), cert. denied, 115 S.Ct. 2625 (1995)). In this regard, the Tenth Circuit has held that in order for a constraint upon religious activity "to exceed the 'substantial burden' threshold, [the] government regulation must significantly inhibit or constrain conduct or expression that manifests some central tenet of a prisoner's individual beliefs; must meaningfully curtail a prisoner's ability to express adherence to his or her faith; or must deny a prisoner reasonable opportunities to engage in those activities that are fundamental to a prisoner's religion." Werner, 49 F.3d at 1480 (citations omitted). Similarly, the Ninth Circuit has stated that
 
 
 28
 [i]n order to show a free exercise violation using the "substantial burden" test, "the religious adherent ... has the obligation to prove that a governmental [action] burdens the adherent's practice of his or her religion ... by preventing him or her from engaging in conduct or having a religious experience which the faith mandates. This interference must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine."
 
 
 29
 Bryant v. Gomez, 46 F.3d 948, 949 (9th Cir.1995) (per curiam) (quoting Graham v. C.I.R., 822 F.2d 844, 850-51 (9th Cir.1987) (internal citations omitted), aff'd sub nom. Hernandez v. Commissioner, 490 U.S. 680 (1988)).
 
 
 30
 In this case, plaintiff presented evidence that defendants threw away his nationality card during his preparation for transfer to another prison facility. Plaintiff also presented evidence that although members of the Moorish Science Temple of America are instructed to keep their nationality cards with them at all times, members who lose their cards are not prohibited from praying, reading the Koran, or attending religious services. In fact, membership in the Moorish Science Temple of America is not in any way dependent on the possession of a nationality card, and members who lose their cards may order replacement cards. Thus, we hold that defendant's alleged conduct in throwing away plaintiff's nationality card did not impose a substantial burden on the free exercise of plaintiff's religion and that the magistrate judge did not err by failing to analyze defendants' alleged conduct under the compelling interest standard contained in the RFRA. Accordingly, we hold that the magistrate judge committed no error in granting defendants' motion for judgment as a matter of law.[3]
 
 III.
 
 31
 For the reasons stated, the magistrate judge's grant of judgment as a matter of law in favor of defendants is AFFIRMED.
 
 
 
 [1]
 With the consent of all parties, the district court referred this case to a magistrate judge for trial
 
 
 [2]
 Pursuant to the 1991 Amendment of Fed.R.Civ.P. 50(a), motions for directed verdicts are now referred to as motions for judgment as a matter of law
 
 
 [3]
 Plaintiff also argues that the magistrate judge improperly defined the issue to be resolved in plaintiff's free exercise claim. Plaintiff asserts that the magistrate judge concluded that no First Amendment violation could occur unless plaintiff was completely prohibited from practicing his religion. Plaintiff argues instead that the magistrate judge should have analyzed whether plaintiff's nationality card was a religious item and whether plaintiff had a sincere belief in the sanctity of that religious item. However, pursuant to the RFRA, a governmental action that infringes upon a person's ability to practice his or her religion rises to the level of a constitutional violation when the action "substantially burdens" a person's religion. See also Abdur-Rahman, 65 F.3d at 492; Werner, 49 F.3d at 1480; and Bryant, 46 F.3d at 949. As discussed above, we have concluded that the alleged conduct of defendants did not substantially burden plaintiff's practice of his religion. Therefore, we hold that plaintiff's argument has no merit