### John B. METHENEY, Plaintiff,

v.

### Carl S. ANDERSON, et al., Defendants.

### No. 1:93 CV 2347.

United States District Court,
N.D. Ohio,
Eastern Division.

Oct. 22, 1996.

John B. Metheney, pro se.

Basil Musnuff, OH Atty. General, Cleveland, OH, for defendants.

## MEMORANDUM OF OPINION

NUGENT, District Judge.

Plaintiff John B. Metheney, acting *pro se*, brings this Complaint under 42 U.S.C. § 1983 against the Defendant employees of the Grafton Correctional Institution (hereinafter "GCI"). The Complaint asserts two separate claims. In the first, Mr. Metheney alleges he was exposed to tuberculosis while incarcerated at the GCI and that such exposure violated his right to be free from cruel and unusual punishment under the Eighth Amendment of the United States Constitution. In his second claim, Mr. Metheney asserts that prison officials violated his right to freely exercise his religious beliefs by confiscating certain religious materials concerning the Aryan Nations from his cell.

Presently before the Court is the joint Motion for Summary Judgment filed by Defendants pursuant to FED.R.CIV.P. 56. The Defendants contend that even when viewing the facts in the light most favorable to the non-moving party, Mr. Metheney is unable to establish a violation of his constitutional rights. For the following reasons, the Defendants' Motion for Summary Judgment is GRANTED.

## I. BACKGROUND

Tuberculosis is a communicable disease that generally affects the lungs, but also appears in other organs of the body. It is transmitted by the tubercle bacilli that are present in the lungs of infected individuals and are expelled by talking, coughing or sneezing. Tuberculosis exists in both dormant and active stages. During the dormant stage, the individual is not infectious and exhibits no symptoms. Only a few infected individuals develop active tuberculosis. With proper treatment—daily dosages of the antibiotic isoniazid for six to twelve months—an infected person probably will never develop active tuberculosis.

PPD skin testing is the recommended method of tuberculosis screening. The PPD test tests for exposure to the bacterium that causes tuberculosis; it does not constitute diagnosis of the disease. The PPD test involves injecting a precise amount of purified protein derivative of tuberculin under the skin on the patient's forearm. The test is examined 48–72 hours later. A hard swelling reaction, or induration, of 10 millimeters or more is considered significant. A reaction of less than 10 millimeters in a healthy adult is considered not positive for exposure.

When tuberculosis infection is suspected through a positive PPD skin test (10 millimeters or more of reaction), a chest x-ray and sputum testing are used to verify the diagnosis and reveal whether the infection is active. An individual who tests negative on these tests but positive on the PPD test has, at some time in his life, been exposed to tuberculosis. Such a person, however, does not have active tuberculosis and cannot transmit the disease.

## II. FACTS

### A. *Exposure to Tuberculosis*

Mr. Metheney was convicted of rape in the Cuyahoga County Court of Common Pleas. He was sentenced to seven to twenty-five years incarceration and initially placed in the Ohio State Reformatory. On August 29, 1986, as part of his intake screening, a PPD skin test was administered to Mr. Metheney to test for the presence of exposure to the tuberculosis bacillus. The results of this test were negative.

In October, 1990 Mr. Metheney was transferred from the Ohio State Reformatory to the GCI. In June or July, 1993, Mr. Metheney claims that one of the other inmates, Mr. Billy Ilitch, told him he had active tuberculosis. Mr. Ilitch slept on a floor bed outside of Mr. Metheney's cell.

In August, 1993, Mr. Metheney was offered the opportunity to have a PPD skin test performed; he declined.

On September 21, 1993, a PPD skin test was again offered to Mr. Metheney. This time, Mr. Metheney granted GCI medical personnel permission to administer the test. The results of this test showed 9 millimeters of reaction.

Upon the first sign of possible exposure to the tuberculosis bacterium, GCI medical personnel issued Mr. Metheney a six month prescription for the antibiotic Isoniazid and Vitamin B6. Mr. Metheney took the prescribed medication from October 4, 1993 through October 10, 1993 and from October 13, 1993 through October 21, 1993. On October 25, 1993, Mr. Metheney signed an Against Medical Advice Form indicating his refusal to take his prescription against the advice of medical professionals at GCI.

Additional tests were performed by GCI medical personnel to be certain that Mr. Metheney did not have tuberculosis. These included sputum cultures, sputum smears and a chest X-ray. Mr. Metheney refused the request of GCI medical personnel to perform additional blood and lab work. All of the tests performed were negative for signs of active tuberculosis.

On March 28, 1994, Mr. Metheney transferred from the GCI to another correctional facility.

## B. *Confiscation of Religious Materials*

It is undisputed that on September 15, 1993, a GCI official confiscated a bible correspondence course from Mr. Metheney's cell which was sent to him from the Church of Jesus Christ Christian/Aryan Nations. The literature was confiscated because the prison official believed that the literature espoused racial separation or white supremacy and therefore threatened the safety and security of the GCI.

Mr. Metheney filed a notice of grievance requesting that the confiscated materials be reviewed by a three-member panel pursuant to Ohio Administrative Code § 5120–9–19(F)(1) to determine whether they should be returned to him. This panel voted to withhold the materials.

Mr. Metheney appealed this decision to the Ohio Department of Rehabilitation and Correction Central Office Publication Screening Committee, which upheld the decision to withhold the materials. Mr. Metheney was then given the opportunity to mail the confiscated materials to someone outside the GCI, which he did.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (citing FED.R.CIV.P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *see also U.S. v. Hodges X–Ray, Inc.,* 759 F.2d 557, 562 (6th Cir.1985).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir.1995) (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis,* 57 F.3d 476, 478 (6th Cir.1995) (quoting *Anderson,* at 248–49, 106 S.Ct. at 2510–11 (1986). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citation omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. at 2512. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Department of Transportation,* 53

F.3d 146, 149 (6th Cir.1995). The text of Fed.R.Civ.P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

*Id.* The Federal Rules identify the penalty for the lack of such a response by the non-moving party as an automatic grant of summary judgment, where otherwise appropriate.

■ Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred that, " 'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.' " *Wiley v. U.S.*, 20 F.3d 222 (6th Cir.1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir.1988)). Rule 56(e) also has certain, more specific requirements:

> [it] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley,* at 225–26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect. The burden is on the opposing party to object to the improper evidence; failure to object constitutes a waiver.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit]

will review such objections only to avoid a gross miscarriage of justice.

*Id.* at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249, 106 S.Ct. at 2510–11. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

> In sum, proper summary judgment analysis entails:

> the threshold inquiry of determining whether there is the need for a trial— whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

## IV. DISCUSSION

### A. *The Cruel and Unusual Punishment Claim*

Mr. Metheney claims that while incarcerated at the GCI he was exposed to an inmate with active tuberculosis and that this posed an unreasonable risk to his health, thus subjecting him to cruel and unusual punishment in violation of the Eighth Amendment.

The U.S. Supreme Court has held that, "[t]he Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." *Wilson v. Seiter,* 501 U.S. 294, 296–97, 111 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991). The Court ruled that the Eighth Amendment applies to deprivations not only relating to the sentence, but also to the conditions of confinement. *Id.; see also Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d

251 (1976). However, the Court did not find that every deprivation denotes a constitutional infringement; only the "unnecessary and wanton infliction of pain" implicates the Eighth Amendment. *Wilson*, 501 U.S. at 296, 111 S.Ct. at 2322–23. The Sixth Circuit has held that the alleged violative conditions of confinement, " 'considered alone or in combination with other conditions,' must amount to *a deprivation of 'life's necessities,'* before a violation of the eighth amendment [sic] can be found." *Walker v. Mintzes*, 771 F.2d 920 (6th Cir.1985) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399–2400, 69 L.Ed.2d 59 (1981) (internal quotes omitted) (emphasis added).

■ A claim arising under the Eighth Amendment has both objective and subjective elements which the plaintiff must prove by a preponderance of the evidence. *Brooks v. Celeste*, 39 F.3d 125 (6th Cir.1994). The objective element of such a claim requires that the deprivation be "sufficiently serious." *Id.* at 298, 111 S.Ct. at 2323–24; *see also Rhodes v. Chapman*, 452 U.S. 337, 348–49, 101 S.Ct. 2392, 2400–01, 69 L.Ed.2d 59 (1981). Conditions of confinement are constitutionally violative only if they result in "unquestioned and serious deprivations of basic human needs." *Rhodes*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). The Sixth Circuit added that, "a plaintiff's Eighth Amendment claim may not be based on the totality of the circumstances, but rather must identify a specific condition that violates the inmate's right to personal safety." *Walker v. Mintzes*, 771 F.2d 920, 925 (6th Cir.1985). Long term, unreasonably high exposure of an inmate to a serious communicable disease, which society would consider violative of contemporary standards of decency, satisfies the objective component of an Eighth Amendment claim. *See Wright v. Baker*, 849 F.Supp. 569 (N.D.Ohio 1994); *Karlovetz v. Baker*, 872 F.Supp. 465 (N.D.Ohio 1994); *McKinney v. Anderson*, 959 F.2d 853 (9th Cir.1992); *Saaty v. Voinovich*, 1995 WL 696672 (6th Cir.1992).

The subjective element of an Eighth Amendment claim mandates an inquiry into the prison official's mental state. The Supreme Court has held that the official must have acted with a "sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298, 111 S.Ct. at 2323–24. The Court determined that an official's "mere inadvertence or error in good faith" do not rise to the level of a constitutional violation; rather, a successful Eighth Amendment claim must entail conduct which is characterized by "obduracy and wantonness." *Id.* (citation omitted). The Sixth Circuit, in *Doe v. Sullivan County, Tennessee*, 956 F.2d 545 (6th Cir.1992), interpreted the Supreme Court's reasoning as follows:

[T]o support an action under section 1983, plaintiffs must establish something more than lack of ordinary due care, inadvertence or error. Instead, *the conduct must be 'obdurate' or 'wanton' i.e., a reckless or callous neglect.* This standard is designed to strike an appropriate balance between the deference that should be accorded to prison officials in the administration of the prison and the constitutional right of prisoners to be free from cruel and unusual punishment.

*Id.* at 550 (emphasis added).

■ In order for a court to determine an official's state of mind, *i.e.* identify conduct which is obdurate or wanton, it must apply the legal standard of "deliberate indifference." *Wilson*, 501 U.S. at 298, 111 S.Ct. at 2323–24; *accord Doe*, 956 F.2d at 550. The Sixth Circuit has held that an official's conduct, undertaken with deliberate indifference to a prisoner's serious medical need or risk of injury, is determinative of whether that official has inflicted cruel and unusual punishment. *Gibson v. Foltz*, 963 F.2d 851 (6th Cir.1992); *see also Wilson*, 501 U.S. at 296, 111 S.Ct. at 2322–23; *Doe*, 956 F.2d at 550.

■ Concerning the first component of Mr. Metheney's Eighth Amendment claim, Mr. Metheney has not presented any evidence to meet the standards set forth above, for the conditions of which he complains, when viewed objectively, were not sufficiently egregious as to be a deprivation of constitutional magnitude. There is no evidence that Mr. Metheney was exposed to tuberculosis while an inmate at the GCI. The evidence presented demonstrates that Mr. Metheney's PPD test, which showed 9 millimeters of reaction, is considered not posi-

tive for exposure to tuberculosis. Further, Mr. Metheney has failed to present any admissible evidence to refute the Defendants' evidence that no inmate of the GCI has ever been diagnosed as having active tuberculosis disease and, therefore, was capable of communicating the tuberculosis bacterium to Mr. Metheney during his incarceration there. Mr. Metheney did present a statement from his cellmate, Mr. Henry Palmer, who asserted that there were inmates with active tuberculosis in the general prison population at the GCI. However, this statement is unsworn and does not satisfy the requirements of Rule 56(e). Although the Defendants failed to object to this evidence, the Court, in its discretion, strikes, *sua sponte*, the statement of Mr. Palmer. *See Milne v. Mills*, 765 F.2d 145, 1985 WL 13294 (6th Cir., (Mich.), May 29, 1985).

Because Mr. Metheney cannot satisfy the objective component of his Eighth Amendment claim, this Court need not reach the subjective component. The Defendants are entitled to summary judgment as to this claim.

### B. *The Free Exercise of Religion Claim*

In 1993, Congress enacted the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, et seq. which statutorily created a compelling interest-least restrictive means test to be applied to all cases where free exercise of religion is substantially burdened. *See Miller–Bey v. Schultz*, 1996 WL 67941 (6th Cir.1996). In particular, the RFRA provides that government "shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section." *Id.* at § 2000bb–1(a). Subsection (b) deems permissible a substantial burden on religion where the government's policy is justified by a compelling governmental interest and is the "least restrictive means" of furthering that governmental interest. The RFRA thereby creates a statutory cause of action for a plaintiff whose free exercise of religion is substantially burdened by the application of a law or policy that is religion-neutral on its face. *See id.* § 2000bb–1(b)(2).

In the RFRA's legislative history, Congress made clear that the act is to be applied to prisoners. *See* S.Rep. No. 111, 103rd Cong., 1st Sess. 9 (1993), reprinted in 1993 U.S.C.C.A.N. 1892, 1898–1899. Consistent with the Act's legislative history, the Sixth Circuit has held that the RFRA is applicable to prisoners and is applied retroactively. *Abdur–Rahman v. Michigan Dep't of Corrections*, 65 F.3d 489, 492 (6th Cir.1995).

To exceed the "substantial burden" threshold, the "government regulation must significantly inhibit or constrain conduct or expression that manifests some central tenet of a prisoner's individual beliefs; must meaningfully curtail a prisoner's ability to express adherence to his or her faith; or must deny a prisoner reasonable opportunities to engage in those activities that are fundamental to a prisoner's religion." *Miller–Bey, supra*, (quoting *Werner v. McCotter*, 49 F.3d 1476 (10th Cir.), cert. denied, —— U.S. ——, 115 S.Ct. 2625, 132 L.Ed.2d 866 (1995)). Similarly, the Sixth Circuit has stated that "[i]n order to show a free exercise violation using the substantial burden test, the religious adherent ... has the obligation to prove that a governmental [action] burdens the adherent's practice of his or her religion ... by preventing him or her from engaging in conduct or having a religious experience which the faith mandates. This interference must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine." *Miller–Bey, supra* (quoting *Bryant v. Gomez*, 46 F.3d 948, 949 (9th Cir. 1995)).

█ Turning now to the merits of Mr. Metheney's claim, it is undisputed that on September 15, 1993, the Defendants confiscated a bible correspondence course from Mr. Metheney's cell which was sent to him from the Church of Jesus Christ Christian/Aryan Nations. At his deposition, Mr. Metheney described the materials as bible excerpts and accompanying questions which he was to answer and return to the Church to make sure he understood the bible excerpts. Mr. Metheney testified that he read his bible and did the study lessons to help keep his mind off of the tuberculosis. He

makes no assertion that the removal of these materials from his possession prevented him from engaging in conduct or having a religious experience which his faith mandates or that removal of the bible study lessons meaningfully curtailed his ability to express adherence to his faith. Moreover, there is no assertion by Mr. Metheney that he was not permitted access to a bible. Thus, as Mr. Metheney has failed to make a threshold showing that his free exercise has been substantially burdened, by Defendants' conduct in confiscating his bible study course, this Court need not address whether the Defendants are able to meet their burden of production and persuasion with regard to providing a compelling governmental interest and use of the least restrictive means. Accordingly, the Defendants are entitled to summary judgment on this claim.

## V. CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment shall be **GRANTED.**

## ORDER

Pursuant to this Court's Memorandum of Opinion filed this date, the Defendants' Motion for Summary Judgment (Doc. # 38) is GRANTED. All costs to Plaintiff.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.