James E. **BRYANT**, Plaintiff–Appellant,

v.

James H. **GOMEZ**, Director, Department of Corrections, Charles D. Marshall, Warden, Defendants–Appellees.

No. 94–15178.

United States Court of Appeals, Ninth Circuit.

Submitted Sept. 16, 1994*.

Decided Jan. 31, 1995.

James E. Bryant, pro se.

Catherine A. McBrien, Deputy Atty. Gen., San Francisco, CA, for defendants-appellees.

Before: CHOY, SKOPIL, and FERGUSON, Circuit Judges.

PER CURIAM:

James E. Bryant appeals the district court's order granting the defendants' motion for summary judgment. Bryant contends that the district court erred by refusing to grant him relief, pursuant to 42 U.S.C. § 1983, requiring the defendants to provide full religious Pentecostal services at the prison where Bryant is an inmate. We reject this contention and affirm.

---

* The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and Ninth Circuit Rule 34–4.

We review the district court's grant of summary judgment *de novo. Jesinger v. Nevada Federal Credit Union*, 24 F.3d 1127, 1130 (9th Cir.1994).

■ In 1993, Congress passed the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb–2000bb–4, which states in relevant part:

§ 2000bb–1. **Free exercise of religion protected**

(a) **In general.** Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b).

(b) **Exception.** Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

The purpose of the RFRA is "to restore the compelling interest test … in all cases where free exercise of religion is substantially burdened." 42 U.S.C. § 2000bb(b)(1). Given this broad purpose, it is clear that the RFRA applies to prisoners' claims.[1] Thus the issue of whether the prison violated Bryant's religious rights must be analyzed using the "substantial burden" test rather than the less stringent "reasonable opportunity" test previously employed.[2]

■ Even under the more stringent "substantial burden" test, Bryant's § 1983 claim fails, because Bryant has not provided any facts to show that the activities which he wishes to engage in are mandated by the Pentecostal religion. In order to show a free exercise violation using the "substantial burden" test,

the religious adherent … has the obligation to prove that a governmental [action] burdens the adherent's practice of his or her religion … by preventing him or her from engaging in conduct or having a religious experience which the faith mandates. This interference must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine.

*Graham v. C.I.R.*, 822 F.2d 844, 850–51 (9th Cir.1987) (internal citations omitted), *aff'd sub nom. Hernandez v. Commissioner*, 490 U.S. 680, 699, 109 S.Ct. 2136, 2148, 104 L.Ed.2d 766 (1988).

■ Bryant argues that the defendants have violated his religious rights, because their refusal to hold full Pentecostal services precludes him from participating in the practices and using the "traditional instruments" which are specific to his faith and distinct from other Protestant faiths.[3] However, while certain practices and instruments might be unique to the Pentecostal faith, Bryant has not argued or provided evidence to show that they are mandated by his faith.

Moreover, Bryant has not given this court any basis for concluding that he cannot accomplish the mandates of his religion through the means that the defendants do provide in his prison. These include 1) "inter-faith" Christian services that are designed to accommodate the needs of various

1. Congress debated and rejected an amendment that would have excluded prisons from the RFRA. *See* S.Rep. No. 111, 103rd Cong., 1st Sess. §§ V(d) and XI (1993); H.R.Rep. No. 88, 103rd Cong., 1st Sess. (1993).

2. Under the latter test, an inmate who adheres to a minority religion must be given a "reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to the conventional religious precepts." *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972). However, the religious needs of the inmate must be balanced against the reasonable penological goals of the prison. *O'Lone v. Estate of Shabazz*, 482 U.S.

342, 349, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987).

3. Defendants argue that these Pentecostal practices, such as "speaking in tongues" and "laying hands on each other," would present a significant danger of assaults during church services. They argue, therefore, that even if Bryant proves that his religious rights are substantially burdened, the prison has a compelling interest in burdening his rights. We do not reach this question, because we hold that Bryant has failed to provide evidence of a substantial burden on his rights.

Christian denominations, 2) Pentecostal literature in the prison library, and 3) a Pentecostal volunteer who is available to attend Bible study classes and focus more specifically on the beliefs of the Pentecostal faith.

The order of the district court is AFFIRMED.