Albert **LUCERO**, et al., Plaintiff,

v.

Lawrence **HENSLEY**, et al., Defendants.

No. CV 94–6780–R (RMC).

United States District Court, C.D. California.

March 18, 1996.

Albert B. Lucero, Ronald R. Nichols, San Luis Obispo, CA, pro se.

Greg R. Galaz, Lancaster, CA, pro se.

William Turner Hobson, California Office of Attorney General, San Diego, CA, for defendants.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

REAL, District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Complaint and other papers along with the attached Report and Recommendation of the United States Magistrate Judge, and has made a *de novo* determination of the Report and Recommendation.

IT IS ORDERED that:

(1) The Report and Recommendation is APPROVED and ADOPTED;

(2) Plaintiffs' motion for summary judgment is DENIED;

(3) Defendants' motion for summary judgment is GRANTED, in part, and DENIED, in part, as follows: Summary Judgment is granted for defendants on all claims **except** plaintiffs' claim alleging a violation of the equal protection clause of the Fourteenth Amendment stemming from the lack of a full-time paid Native American spiritual leader at CMC;

(4) JUDGMENT shall be entered dismissing the Complaint and action against defendants Lawrence Hensley and Michael Bentley;

(5) Plaintiffs are GRANTED leave to amend their complaint to name as defendants the Warden and Associate Wardens at CMC; **provided said amendment is made within thirty (30) days of the date of this Order.** If the amendment is not timely made, the Court will consider this to be an indication that plaintiffs do not intend to pursue their claim, and may dismiss the action; and

(6) Plaintiffs' motion to amend the complaint to provide that any relief granted be transferred to subsequent institutions is DENIED.

## REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

CHAPMAN, United States Magistrate Judge.

This report and recommendation is submitted to the Honorable Manuel L. Real, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.

## BACKGROUND

On October 11, 1994, plaintiffs Alberto B. Lucero, Greg R. Galaz,[1] and Ronald R. Nichols, state prisoners in the California Men's Colony, San Luis Obispo, California ("CMC"), proceeding *pro se* and *in forma pauperis,* filed a civil rights complaint[2] pursuant to 42 U.S.C. § 1983. Plaintiffs allege that the policies and actions of defendants Lawrence Hensley and Michael Bentley, correctional officers at CMC, interfere with their ability to practice their Native American religion in violation of the First Amendment's free exercise clause, constitute cruel and unusual punishment under the Eighth Amendment, and violate the Fourteenth Amendment's equal protection clause.

Plaintiffs allege that defendants, from August 1993 through June 3, 1994, engaged in a pattern of discrimination toward them and other Native American inmates and participants in their "Sweat Lodge." Plaintiffs' seek injunctive relief to protect themselves against retaliation for filing this litigation and to require the return to them, and the continued possession in their housing units of animal skins and other Native American religious artifacts, which were seized by defendants. Plaintiffs also demand that the California Department of Corrections ("CDC") hire a full-time Native American chaplain at CMC. (Complaint, "Relief Requested" section, 1:14–16, 1:19–21). Lastly, plaintiffs pray for the appointment of a federal monitor to oversee CMC's treatment of Native American prisoners, and the disciplinary investigation of defendants.

The incidents of purported religious harassment provide necessary background to understand plaintiffs' claims. The first incident occurred in September 1993, when a full-time Native American chaplain's position became available at CMC, but then part-time Native American chaplain Robert Belardes was not offered the position, and the position was not filled. (Complaint, 3:22–28). The next incident occurred on May 10, 1994, when defendant Hensley allegedly selectively targeting Native American inmates by issuing rules violation reports (known as "CDC 115's") to ten Native American inmates participating in the Sweat Lodge Ceremony who did not immediately respond to a recall and lockup order. (Complaint, 1:1–3; 1:9–11). Apparently, that evening, two lights failed in the yard near the Sweat Lodge, giving rise to the lockup order. (Complaint, 1:3–4). The ten Native American inmates claimed they did not know of the order, and completed their Sweat Lodge Ceremony before returning to lockup. An internal prison appeals panel accepted this defense on October 6, 1994, and revoked the rules violation reports. (Defendants' Motion For Summary Judgment, Exh. 6).

Later, on May 14, 1994, the participants of the Sweat Lodge held a summer solstice celebration in accordance with previously established policy and as approved by the Associate Warden. (Complaint, 1:16–19 and Exh. D; 1:25–27, Exh. E1 and E2). Part of the celebration involved a "gift give away," in which the inmates gave gifts to visiting family and guests. (Complaint, 1:19–21). After the ceremony, defendants allegedly confiscated the gifts and also seized four ceremonial hawk feathers. (Complaint, 1:22–25).

Last, on May 23, 1994, plaintiffs allege that defendant Bentley ordered cell searches and confiscated animal skins from plaintiffs. (Complaint, 2:2–9). Defendants contend that the animal skins create a security risk as they could be used in an escape attempt. (Complaint, 2:10; Defendants' motion for summary judgment, 12:15–18; Declaration of William Bentley, par. 3). Plaintiffs submit documentation indicating that prison authorities had previously approved the possession by inmates in their cells of certain animal skins and other religious artifacts, and contend that the confiscation of these religious items was part of a pattern of harassment. (Complaint, 2:10–11 and Exh.

---

1. Plaintiff Galaz has subsequently been transferred to California State Prison, Los Angeles County, Lancaster, California; thus, no relief may be afforded plaintiff Galaz as his claims have become moot. *Sample v. Borg,* 870 F.2d 563 (9th Cir.1989) (Order).

2. Plaintiff denominated the case a "class action" and intended to represent all Native American inmates at CMC. The Court, however, on August 11, 1995, ruled this action is not a class action.

I, J, K). On May 23, 1994, defendants allegedly also searched the Sweat Lodge and Chaplain Belardes' office. (Complaint, 3:2–3). To attempt to resolve the conflict, defendants and Chaplain Belardes met on June 2, 1994; but on the next day, June 3, 1994, plaintiffs allege that defendant Hensley intentionally harassed Chaplain Belardes by searching religious items he brought into CMC. (Complaint, 3:6–18).

On August 30, 1995, both plaintiffs and defendants filed motions for summary judgment, which are now before the Court. Plaintiffs have also filed various motions for a preventive injunction,[3] a writ of mandate, and recently filed a motion to amend the complaint.

### DISCUSSION

■ Fed.R.Civ.P. 56(c) authorizes the granting of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The standard for granting a motion for summary judgment is essentially the same as for granting a directed verdict. Judgment must be entered "if, under the governing law, there can be but one reasonable conclusion as to the verdict.... If reasonable minds could differ ..." judgment should not be entered in favor of the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

■ The moving party bears the initial burden of identifying the elements of the claim in the pleadings, or other evidence, which the moving party "believes demon-strates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir.1982). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir.1982). The burden then shifts to the non-moving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Finally, the parties bear the same substantive burden of proof as would apply at a trial on the merits. *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512.

### First Amendment Claims:

Plaintiffs claim that the defendants' refusal to allow them to possess animal skins in their housing units and failure to provide them with a full-time Native American spiritual leader violate the free exercise clause of the First Amendment.[4] These claims must be analyzed under the standard set forth in the recently enacted Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. Section 2000bb–2000bb–4, *et seq*. In relevant part, RFRA provides:

> (a) Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general

---

**3.** On April 19, 1995, plaintiffs filed a motion for a preventive injunction (temporary restraining order) seeking an order requiring Chaplain Belardes to be retained at CMC in his then-current part-time position. Instead, Chaplain Belardes was transferred to two other prisons where he holds a joint full-time position. (Belardes Decl., submitted with defendants' motion for summary judgment). Plaintiffs' request is therefore moot. *See Luckette v. Lewis*, 883 F.Supp. 471, 474 n. 2 (D.Ariz.1995). Moreover, the Court's ruling on plaintiffs' preliminary injunction request (through their motion for summary judgment)

disposes of the request for a preventive injunction. To the extent the motion for a preventive injunction requests relief not requested in the injunctive relief request, this relief will be denied.

**4.** The First Amendment states that "Congress shall make no law ... prohibiting the free exercise [of religion]." In *Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), the Supreme Court held that the free exercise clause applies to the states through the Fourteenth Amendment.

applicability, except as provided in subsection (b).

(b) Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000bb-1. In enacting RFRA, Congress set out to overturn the Supreme Court's decision in *Employment Division v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). 42 U.S.C. § 2000bb(a). In *Smith,* the Supreme Court had held that the free exercise clause of the First Amendment did not require the government to show a "compelling state interest" for every "valid and neutral law of general applicability" which impacted on religious exercise. *Id.* 494 U.S. at 879, 110 S.Ct. at 1600. In RFRA, Congress stated "governments should not substantially burden religious exercise without compelling justification." 42 U.S.C. § 2000bb(a)(3). Congress declared that the purpose of RFRA was "to restore the compelling interest test as set forth in *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) and *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) and to guarantee its application in all cases where free exercise of religion is substantially burdened." 42 U.S.C. § 2000bb(b)(1). Further, the legislative history makes clear that prisoner claims are covered by the statute. *Bryant v. Gomez,* 46 F.3d 948, 949 n. 1 (9th Cir.1995); *Luckette v. Lewis,* 883 F.Supp. 471, 475–76 (D.Ariz.1995).

 in the Ninth Circuit, a plaintiff seeking to show a violation of the free exer-

cise clause of the First Amendment must show a violation of RFRA. *Bryant v. Gomez,* 46 F.3d 948, 949 (9th Cir.1995). Looking back to pre-*Smith* standards, in *Bryant,* the Ninth Circuit held that:

> [T]he religious adherent ... has the obligation to prove that a governmental [action] burdens the adherent's practice of his or her religion ... by preventing him or her from engaging in conduct or having a religious experience which the faith mandates. This interference must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine.

*Id.* (quoting *Graham v. C.I.R.,* 822 F.2d 844, 850–51 (9th Cir.1987) (internal quotation marks and citations omitted), *aff'd sub nom. Hernandez v. Commissioner,* 490 U.S. 680, 699, 109 S.Ct. 2136, 2148, 104 L.Ed.2d 766 (1988)). Applying this standard, the Ninth Circuit held that an inmate was not entitled to full Pentecostal services using the "traditional instruments" of his religion because the inmate had not shown that these services were mandated by his religion.[5] *Bryant,* 46 F.3d at 949. Instead, the court found that the means provided by the defendants, including inter-faith Christian services, Pentecostal literature in the prison library, and a Pentecostal volunteer available to attend Bible study, sufficiently accomplished the mandate of the inmate's religion. *Id.*

Here, plaintiffs have not shown that defendants have interfered with a tenet or belief central to their religion or prevented them from having an experience that their faith mandates. Chaplain Belardes states in his declaration, paragraph 6: "In order to actively practice native american religion it is not necessary to possess the hides of animals in

---

5. We note that the Tenth Circuit has adopted a different test. In *Werner v. McCotter,* 49 F.3d 1476, 1480 (10th Cir.1995), the Tenth Circuit held:

> To exceed the "substantial burden" threshold, government regulation must significantly inhibit or constrain conduct or expression that manifests some central tenet to a prisoner's individual beliefs; must meaningfully curtail a prisoner's ability to express adherence to his or her faith; or must deny a prisoner reasonable

opportunities to engage in those activities that are fundamental to a prisoner's religion.

By not requiring that the burdened practice be "mandated" by the prisoner's religion as *Bryant* does, the Tenth Circuit broadened the scope of RFRA's protection. District courts in other circuits are split on whether to follow the religiously "mandated" test or the religiously "motivated" test. *See Sasnett v. Sullivan,* 908 F.Supp. 1429 (W.D.Wis.1995) and cases cited therein.

one's housing unit. It is acceptable that adherents of this religion have access to hides at the sweat lodge site." Furthermore, plaintiffs now submit that they are not opposed to keeping the animal hides at the Sweat Lodge site. (Plaintiffs' Opposition Brief, 9:26–27). Instead, they request that adequate storage space be provided so that the participants of the Sweat Lodge may store their animal skins in separate lockers to preserve the sanctity of the hides. (Plaintiff's Opposition Brief, 9:28–10:3). Plaintiffs have not, however, presented evidence that the Native American religion mandates that animal hides be kept separately. Accordingly, defendants should be granted summary judgment on this aspect of plaintiffs' free exercise claim under the First Amendment.

■ Similarly, plaintiffs' argument for a full time chaplain based on the free exercise clause also must fail. Again, Chaplain Belardes in his declaration states that he ordained several inmates at CMC, including plaintiff Lucero, who is the pipe holder,[6] to perform the religious ceremonies mandated by the Native American religion. These inmates may conduct the religious ceremonies in the absence of a Native American spiritual leader. (Belardes Declaration, para. 5). Further, defendants provide access to the Sweat Lodge seven days per week from 8:00 a.m. to 9:00 p.m.[7] (Pruitt Decl. para. 4). Therefore, plaintiffs have not shown that they cannot accomplish the mandates of their religion without a Native American chaplain or spiritual leader. *Bryant,* 46 F.3d at 949; *Muhammad v. City of New York Dep't. of Corrections,* 904 F.Supp. 161 (S.D.N.Y.1995) (member of Nation of Islam did not show he could not accomplish the mandates of his faith through participation in generic Muslim

service). Accordingly, defendants also should be granted summary judgment on this aspect of plaintiffs' free exercise claim under the First Amendment.

**Eighth Amendment Claim:**

■ Plaintiffs contend that the interference with their ability to practice their Native American religion violates the Eighth Amendment's prohibition against cruel and unusual punishment. Under the Eighth Amendment, a prisoner's constitutional rights may be violated by prison conditions that render his confinement cruel and unusual. *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986); *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399–2400, 69 L.Ed.2d 59 (1981). In order to state a claim, plaintiff must allege specific facts demonstrating that the prison conditions have resulted in the wanton and unnecessary infliction of pain. *Whitley v. Albers,* 475 U.S. at 319, 106 S.Ct. at 1084; *Rhodes v. Chapman,* 452 U.S. at 346, 101 S.Ct. at 2399. Here, plaintiffs do not allege any infliction of pain, therefore, their Eighth Amendment claim must fail and summary judgment should be granted defendants on this claim.

**Equal Protection Claim:**

Apart from the free exercise of religion claim, plaintiffs allege a violation of the equal protection clause of the Fourteenth Amendment through the denial of a full-time Native American spiritual leader paid by CDC. Because plaintiffs' equal protection claim arises from the same factual circumstances as their free exercise claim, we must first consider whether plaintiffs may maintain an equal protection claim independent of RFRA.

---

**6.** The Ninth Circuit has described the pipe ceremony as follows:

> The Pipe Ceremony begins by the Pipe Holder and other participants purifying themselves and the pipe by burning sage or sweet grass. The Pipe Holder then fills the pipe with tobacco, praying to various spirits.... The Pipe Bearer lights the pipe and passes it to the other participants. When the bowl is empty, the Pipe Bearer cleans it and takes apart the pipe, thereby ending the ceremony.

*Allen v. Toombs,* 827 F.2d 563, 565 n. 4 (9th Cir.1987).

**7.** The Ninth Circuit has described the Sweat Lodge ceremony as follows:

> The Sacred Sweat Lodge ritual takes place in a small hut-like structure built from willows and blankets. Large rocks are heated in a fire pit outside the lodge, and then, by means of a pitchfork, are placed in the lodge, where water is poured over them to create steam. Herbs are burned for purification. Participants enter the lodge naked, to pray and meditate, and to purge the body and spirit....

*Id.* at 565 n. 5.

■ Congress explicitly stated that the purpose of RFRA was to restore the compelling interest test to free exercise of religion claims. 42 U.S.C. § 2000bb(b)(1). The statute, by its terms, addresses only free exercise of religion claims, i.e. claims arising from alleged "substantial burden" placed on religion by the government; it does not address equal protection claims arising from alleged unequal treatment of religious practices by the government. *See* 42 U.S.C. § 2000bb–1(a).

■ Under the equal protection clause, strict scrutiny applies to governmental action which discriminates against a suspect class or which interferes with a fundamental right. *Kadrmas v. Dickinson Public Schools,* 487 U.S. 450, 457–58, 108 S.Ct. 2481, 2486–88, 101 L.Ed.2d 399 (1988). Subsequent to the enactment of RFRA, where plaintiffs invoke equal protection scrutiny based on their fundamental right to the free exercise of religion, the Third Circuit has held that the plaintiffs must show they received different treatment from other similarly situated individuals or groups. *Brown v. Borough of Mahaffey, Pa.,* 35 F.3d 846, 850 (3rd Cir. 1994) (citing *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)).

A similar disparate treatment analysis was applied by the Ninth Circuit in a pre-RFRA decision to an inmate's claim alleging that a prison prohibition on inmates' performance of Native American religious ceremonies violated the Fourteenth Amendment's equal protection clause.[8] *Allen v. Toombs,* 827 F.2d at 567. Quoting *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081–82, 31 L.Ed.2d 263 (1972), the Ninth Circuit, in *Allen,* held:

[A]n inmate who is an adherent of a minority religion must be afforded "a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts."

*Id.* Applying this standard, the Ninth Circuit found that the defendants had provided reasonable accommodation for Native American inmates in the disciplinary segregation unit to practice their religion by allowing weekly access to an outside pipe bearer when one was available. The court reasoned that because the prison administration was not under an affirmative duty to provide each inmate with the spiritual counselor of his choice, the administration had made a good faith accommodation of the inmates' rights in light of practical considerations. *Allen v. Toombs,* 827 F.2d at 568–69.

■ Here, under the rationales of the Ninth Circuit in *Allen* and the Third Circuit in *Brown,* to prevail on their equal protection claim, the plaintiffs must show that their access to a Native American spiritual leader was not reasonable in comparison to the access of other inmates to spiritual leaders of other religious faiths. Plaintiffs contend that there are an equal number of Jewish and Native American inmates at CMC, and that CMC employs a full-time rabbi but not a full-time Native American spiritual leader. (Plaintiffs' Response to Defendants' Opposition To Motion for Summary Judgment, 5:23–28). The complaint, with this added contention, is sufficient to state an equal protection claim. In their motion for summary judgment, however, plaintiffs have not submitted evidence of this contention and, therefore, are not entitled to summary judgment on this claim. Yet, defendants have also submitted no evidence demonstrating that they have made a good faith attempt to treat different religious groups equally and, thus, have similarly failed to meet their burden on summary judgment.[9] *See Abordo v. Hawaii,* 902 F.Supp. 1220, 1226 (D.Hawaii, 1995) (refusing to grant summary judgment to defendant prison officials on a Native American inmate's claim of violation of the

---

8. Inmates also challenged the prison's prohibition against inmate spiritual leaders performing the pipe ceremony under the free exercise clause. As in post-RFRA cases, the Ninth Circuit analyzed the free exercise claim separately from the equal protection claim.

9. In fact, defendants failed to respond to the Court's Order of June 22, 1995, for a Special Report detailing the Native American population at CMC. That information and other data as to the religious affiliation of CMC inmates and their access to spiritual leaders paid by CDC are germane to the equal protection claim.

equal protection clause stemming from defendants' requirement that he cut his hair, while permitting members of other religious sects and women to wear long hair and Muslims to wear beards).

## Eleventh Amendment Immunity:

██ Defendants argue that a state and its subdivisions are not "persons" within the meaning of Section 1983 and are not subject to suit thereunder. *Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 3057–58, 57 L.Ed.2d 1114 (1978). In addition to the elements of Section 1983, the Eleventh Amendment bars suits against a state and its agencies and departments. *Papasan v. Allain,* 478 U.S. 265, 276–77, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986). Thus, to the extent plaintiffs seek relief against CMC, for example to investigate defendants Hensley and Bentley, CMC is not a proper defendant. (The complaint, moreover, does not name CMC as a defendant and CMC has never been served process.)

██ Yet, plaintiffs may bring suit for injunctive relief against individual state officials in their official capacities. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, n. 10, 109 S.Ct. 2304, 2312, n. 10, 105 L.Ed.2d 45 (1989); *Papasan,* 478 U.S. at 276–77, 106 S.Ct. at 2939–40; *Ulaleo v. Paty,* 902 F.2d 1395, 1398 (9th Cir.1990). Actions for prospective relief against persons in their official capacities are not treated as actions against the state. *Will,* 491 U.S. at 71 n. 10, 109 S.Ct. at 2312 n. 10 (citations omitted). Even in their official capacities, however, defendants must somehow be at fault to be liable under Section 1983. *Rizzo v. Goode,* 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976) (there must be an affirmative link or a causal relationship between the misconduct and the adoption of a policy, express or implied, showing the official's authorization or approval of such conduct).

██ Here, while plaintiffs seek injunctive relief to alter CMC policies concerning Native American religious practices, plaintiffs do not allege that officers Hensley or Bentley are responsible for formulating CMC policies; rather, they are allegedly responsible for carrying them out in an unlawful manner.

Yet, as the declaration of Associate Warden William Pruitt shows, the policy-making officials at CMC had actual notice of the present lawsuit and the defenses raised by counsel. Accordingly, plaintiffs should be given leave to amend their complaint to name as defendants Associate Warden Pruitt and any other defendant with policy making authority over religious practices at CMC, pursuant to Federal Rules of Procedure 15(a). Cf. Fed. R.Civ.P. 19.

## Retaliation and Investigation Claims:

Plaintiffs have filed several motions for a "writ of mandate" seeking this Court to prevent defendants from retaliating against them for filing the instant lawsuit through housing assignments, lack of medical treatment, or otherwise. The Court considers these motions or petitions as claims for injunctive relief.

██ Any action taken by a prison official against an inmate in retaliation for his use of the grievance process (or litigation) may be a violation of the inmate's First Amendment rights. *See Thomas v. Carpenter,* 881 F.2d 828, 829 (9th Cir.1989), *cert. denied,* 494 U.S. 1028, 110 S.Ct. 1475, 108 L.Ed.2d 612 (1990); *Soranno's Gasco, Inc. v. Morgan,* 874 F.2d 1310, 1314 (9th Cir.1989); *Rizzo v. Dawson,* 778 F.2d 527, 531–32 (9th Cir.1985); *Farr v. Blodgett,* 810 F.Supp. 1485, 1490 (E.D.Wash.1993). To make a claim for retaliation, however, the plaintiffs have the burden of showing that retaliation was the substantial or motivating factor behind the conduct of the defendants. *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Thomas v. Carpenter,* 881 F.2d at 830; *Soranno's Gasco,* 874 F.2d at 1314. After such a showing, the burden shifts to the defendants to show that they would have engaged in the same conduct even if the plaintiffs had not pursued legal action against them. *Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576; *Soranno's Gasco,* 874 F.2d at 1314. Plaintiffs who are inmates also must show that the defendants' alleged retaliatory acts did not advance the legitimate goals of the institution or were not tailored

narrowly enough to achieve such goals. *Rizzo v. Dawson*, 778 F.2d at 532; *Schroeder v. McDonald*, 823 F.Supp. 750, 760 (D.Haw. 1992); *Pratt v. Rowland*, 770 F.Supp. 1399, 1405 (N.D.Cal.1991); *Rodriguez v. Kincheloe*, 763 F.Supp. 463, 472 (E.D.Wash.1991), *aff'd*, 967 F.2d 590 (9th Cir.1992), *cert. denied*, 507 U.S. 933, 113 S.Ct. 1318, 122 L.Ed.2d 704 (1993).

■ Plaintiffs' various allegations of retaliation concern plaintiff Lucero's housing assignments, medical treatment, and work group assignment subsequent to his September 1995 shoulder surgery. (*See* Plaintiffs' Motions for Writ of Mandate, dated August 10, 1995, August 15, 1995, October 25, 1995, November 14, 1995, and December 20, 1995). In two responses to plaintiffs' various motions, dated August 31, 1995 and November 21, 1995, defendants submit evidence that the housing assignments advanced the needs and space requirements of CMC and that they have provided adequate medical treatment to plaintiff Lucero. (*See* Declaration of William Duncan, Warden, filed August 31, 1995; Declaration of David Stevig, M.D., filed November 21, 1995.) Here, plaintiffs have not met their burden of showing that retaliation was the substantial or motivating factor behind defendants' actions and have not refuted defendants' evidence that they acted reasonably to accommodate plaintiff's needs. Further, plaintiffs have not shown that the assignment of plaintiff Lucero to his work status group was substantially motivated by a retaliatory purpose. Thus, summary judgment should be granted defendants on this claim.

### Motion To Amend The Complaint:

■ Plaintiffs seek to amend the complaint to allow any judgment entered in this matter to apply to any CDC facility where they may be confined in the future. In general, a prisoner's transfer from one institution to another moots a claim for injunctive relief against the first institution. *Sample v. Borg*, 870 F.2d 563. Speculative fear that an alleged wrong may reoccur will not allow the courts to invoke the capable-of-repetition doctrine as an exception to the mootness doctrine. *Preiser v. Newkirk*, 422 U.S. 395, 402–03, 95 S.Ct. 2330, 2334–35, 45 L.Ed.2d 272 (1975).

■ Here, plaintiffs seek to circumvent the potential mootness problem by including a request for transferrable injunctive relief in an amendment to their complaint. However, this Court has no jurisdiction over such purely speculative claims; the constitutional limitations of Article III require a distinct and palpable injury to the plaintiffs. *See Hong Kong Supermarket v. Kizer*, 830 F.2d 1078, 1081 (9th Cir.1987). Plaintiffs' motion to amend the complaint should, thus, be denied.

### RECOMMENDATION

For the foregoing reasons, IT IS RECOMMENDED that the Court issue an Order:

(1) APPROVING and ADOPTING the Report and Recommendation;

(2) DENYING plaintiffs' motion for summary judgment;

(3) GRANTING, in part, and DENYING, in part, defendants' motion for summary judgment, as follows: Summary Judgment is granted for defendants on all claims except plaintiffs' claim alleging a violation of the equal protection clause of the Fourteenth Amendment stemming from the lack of a full-time paid Native American spiritual leader at CMC;

(4) Entering JUDGMENT dismissing the Complaint and action against defendants Lawrence Hensley and Richard Bentley;

(5) GRANTING plaintiffs leave to amend their complaint to name as defendants the Warden and Associate Wardens at CMC; **provided said amendment is made within thirty (30) days of the date of this Order.** If the amendment is not timely made, the Court will consider this to be an indication that plaintiffs do not intend to pursue their claim, and may dismiss the action; and

(6) DENYING plaintiffs' motion to amend the complaint to provide that any relief granted be transferred to subsequent institutions.

Dated Jan. 24, 1996