Timmy Ray TYSON, Plaintiff,

v.

J.M. RATELLE, et al., Defendants.

No. CV 94–2381–MRP (RMC).

United States District Court,
C.D. California.

April 11, 1996.

Timmy Ray Tyson, Lancaster, CA, pro se.

Cynthia S. Floyd, California Office of the Attorney General, Los Angeles, CA, for defendants.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

PFAELZER, District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Complaint and other papers along with the attached Report and Recommendation of the United States Magistrate Judge, and has made a *de novo* determination of the Report and Recommendation.

IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; and (2) defendants' motion for summary judgment shall be granted, in part, and denied, in part, as follows: Summary Judgment is granted for defendants on all claims except plaintiff's claims for injunctive relief regarding the alleged violations of the free exercise clause of the First Amendment and Article I, Section 4, of the California Constitution, in the observance of Jumu'ah, reasonable access to chapel for worship, and the observance of Ramadan.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

CHAPMAN, United States Magistrate Judge.

This report and recommendation is submitted to the Honorable Mariana R. Pfaelzer, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.

### BACKGROUND

Plaintiff Timmy Ray Tyson, a state prisoner proceeding *pro se* and *in forma pauperis*, filed a civil rights complaint under 42 U.S.C. § 1983 on April 13, 1994. The plaintiff names as defendants the current warden at California State Prison—Los Angeles County ("CSP–LAC"), the previous warden at CSP–LAC, and three associate wardens at CSP–LAC. The complaint alleges that defendants violated plaintiff's First Amendment and Fourteenth Amendment rights by interfering with his practice of the Islamic religion and by generally providing plaintiff, and other

Muslim inmates, an unequal opportunity to practice their religion compared with Christian inmates.[1]

The complaint sets forth four separate claims. First, plaintiff alleges that when CSP–LAC opened in February of 1993, Christian inmates received the services of a full-time chaplain, while Muslim inmates did not receive services of a Muslim cleric until November 5, 1993. (Complaint, para. III). Second, plaintiff alleges that when CSP–LAC opened, Christian inmates had access to the prison chapel at least five days per week, while Muslim inmates did not receive access to the chapel five days per week until November 8, 1993. (*Id.*). Third, plaintiff alleges ongoing violations where he and other Muslim inmates are denied the right to partake in religious celebrations, to observe an Islamic fast, and to receive "essential office supplies." (*Id.*). Finally, plaintiff alleges that there exists the threat that defendants will revoke his, and other Muslim inmates' religious rights. (*Id.*). The plaintiff seeks an injunction against a retaliatory transfer, a declaratory judgment, compensatory and punitive damages of $1.00, and "all the same religious rights afforded to the Christians." (Complaint, par. IV).

On February 22, 1995, defendants filed a motion for summary judgment. The defendants' motion is supported largely by the declaration of CSP–LAC's part-time Muslim cleric, Imam Abdul–Wahab Omeira.[2] Through this declaration, defendants attempt to show that they provide adequate opportunities for the practice of the Islamic religion at CSP–LAC.[3] The plaintiff filed an opposition to defendants' motion on March 23, 1994. The plaintiff's motion is supported by numerous form declarations from Muslim inmates.[4]

**DISCUSSION**

**I**

Fed.R.Civ.P. 56(c) authorizes the granting of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The standard for granting a motion for summary judgment is essentially the same as for granting a directed verdict. Judgment must be entered "if, under the governing law, there can be but one reasonable conclusion as to the verdict.... If reasonable minds could differ ..." judgment should not be entered in favor of the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of identifying the elements of the claim in the pleadings, or other evidence, which the moving party "believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Zoslaw v. MCA Distrib. Corp.,* 693 F.2d 870, 883 (9th Cir.1982). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.,* 677 F.2d 1301, 1305–06 (9th Cir.1982). The burden then shifts to the non-moving party to establish, beyond the pleadings, that there is

---

1. There are between 125–150 Muslim inmates confined at CSP–LAC. Declaration of Imam Abdul–Wahab Omeira, para. 7.

2. Imam Omeira was raised, and religiously trained, in Syria. He speaks fluent Arabic and considers himself to be "orthodox." (Omeira Decl., para. 2).

3. Imam Omeira's declaration contains some factual information of which he may not have personal knowledge and legal conclusions. (Omeira Decl., para. 4, 10, 11, 12, 28). The Court has considered the declaration to the extent it states

facts within the personal knowledge of the declarant.

4. These declarations also contain some factual information of which the declarants may not have personal knowledge, as well as conclusory statements. As plaintiff is a *pro se* prisoner whose submissions must be liberally construed, *Karim–Panahi v. Los Angeles Police Dept.,* 839 F.2d 621, 623 (9th Cir.1988), the Court has considered the declarations to the extent that they show sufficient facts to raise an issue of material fact.

a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Finally, the parties bear the same substantive burden of proof as would apply at a trial on the merits. *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512.

## II

█ The complaint does not allege whether plaintiff has sued defendants in their individual or official capacities. The defendants correctly point out that the Eleventh Amendment bars suit against a state and its agencies and departments for monetary damages. *Papasan v. Allain*, 478 U.S. 265, 276–77, 106 S.Ct. 2932, 2939–40, 92 L.Ed.2d 209 (1986). Suits against state officials in their official capacities must be treated as suits against the state. *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985).

█ Yet, plaintiff may bring suit for injunctive relief against individual state officials in their official capacities. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, n. 10, 109 S.Ct. 2304, 2312, n. 10, 105 L.Ed.2d 45 (1989); *Papasan*, 478 U.S. at 276–77, 106 S.Ct. at 2939–40; *Ulaleo v. Paty*, 902 F.2d 1395, 1398 (9th Cir.1990). Actions for prospective relief against persons in their official capacities are not treated as actions against the state. *Will*, 491 U.S. at 71 n. 10, 109 S.Ct. at 2312 n. 10 (citations omitted). To warrant injunctive relief under Section 1983, however, there must be an affirmative link or a causal relationship between the constitutional deprivation and the adoption of a policy, express or implied, showing the official's authorization or approval of the conduct leading to the constitutional deprivation. *Rizzo v. Goode*, 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976). When a prisoner seeks injunctive or declaratory relief against a number of officials responsible for operating a prison, the court must focus on the duties and responsibilities of the individual defendants whose acts and omissions are alleged to have caused the constitutional deprivations. *Rizzo v. Goode*, 423 U.S. at 370–71, 375–77, 96 S.Ct. at 603–04, 606–07; *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (regarding Eighth Amendment claims). The allegations in the complaint, and the declarations plaintiff submits (as discussed below), are sufficient to show that defendants may have adopted certain policies with respect to the practice of the Islamic religion at CSP–LAC which may entitle plaintiff to injunctive relief.

█ The plaintiff also seeks prospective injunctive relief, claiming that a threat exists that defendants will revoke certain unspecified rights related to the practice of the Islamic religion (Complaint, par. III) and will retaliate against him for filing the present lawsuit. (Complaint, par. IV). The plaintiff, however, has presented no proof that such actions may occur in the future. These claims are, thus, purely speculative, and plaintiff has no standing to bring claims based on the theoretical possibility of wrongdoing by defendants. *See Nelsen v. King County*, 895 F.2d 1248, 1250–52 (9th Cir. 1990).

█ When a prisoner seeks monetary damages from prison officials in their individual capacities, the causation inquiry becomes more specific and refined. *Leer v. Murphy*, 844 F.2d at 633. To obtain monetary damages, the prisoner must demonstrate that a specific prison official, in acting or failing to act, caused the alleged constitutional deprivation. *Id.* at 633–34. *See also Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir.1978). However, neither in his complaint nor his opposition to the motion for summary judgment does plaintiff specify particular acts of the individual defendants sufficient to support an award of monetary damages against them.

## III

### First Amendment Claim

The plaintiff claims that the defendants are interfering with his observance of Islamic religious celebrations and a religious fast in violation of the free exercise clause of the

First Amendment.[5] This claim must be analyzed under the standard set forth in the recently enacted Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. Section 2000bb–2000bb–4, *et seq.* In relevant part, RFRA provides:

(a) Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b).

(b) Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000bb–1. In enacting RFRA, Congress set out to overturn the Supreme Court's decision in *Employment Division v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). 42 U.S.C. § 2000bb(a). In *Smith*, the Supreme Court had held that the free exercise clause of the First Amendment did not require the government to show a "compelling state interest" for every "valid and neutral law of general applicability" which impacted on religious exercise. *Id.* 494 U.S. at 879, 110 S.Ct. at 1600. In RFRA, Congress stated "governments should not substantially burden religious exercise without compelling justification." 42 U.S.C. § 2000bb(a)(3). Congress declared that the purpose of RFRA was "to restore the compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) and *Wisconsin v.*

*Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) and to guarantee its application in all cases where free exercise of religion is substantially burdened." 42 U.S.C. § 2000bb(b)(1). Further, the legislative history makes clear that prisoner claims are covered by the statute. *Bryant v. Gomez*, 46 F.3d 948, 949 n. 1 (9th Cir.1994); *Luckette v. Lewis*, 883 F.Supp. 471, 475–76 (D.Ariz.1995).

In the Ninth Circuit, a plaintiff seeking to show a violation of the free exercise clause of the First Amendment must show a violation of RFRA. *Bryant v. Gomez*, 46 F.3d 948, 949 (9th Cir.1995). Looking back to pre-*Smith* standards, in *Bryant*, the Ninth Circuit held that:

[T]he religious adherent ... has the obligation to prove that a governmental [action] burdens the adherent's practice of his or her religion ... by preventing him or her from engaging in conduct or having a religious experience which the faith mandates. This interference must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine.

*Id.* (quoting *Graham v. C.I.R.*, 822 F.2d 844, 850–51 (9th Cir.1987) (internal quotation marks and citations omitted), *aff'd sub nom. Hernandez v. Commissioner*, 490 U.S. 680, 699, 109 S.Ct. 2136, 2148, 104 L.Ed.2d 766 (1988)). Applying this standard, the Ninth Circuit held that an inmate was not entitled to full Pentecostal services using the "traditional instruments" of his religion because the inmate had not shown that these services were mandated by his religion.[6] *Bryant*, 46

---

**5.** The First Amendment states that "Congress shall make no law ... prohibiting the free exercise [of religion]." In *Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), the Supreme Court held that the free exercise clause applies to the states through the Fourteenth Amendment.

**6.** The Court notes that the Tenth Circuit has adopted a different test. In *Werner v. McCotter*, 49 F.3d 1476, 1480 (10th Cir.1995), the Tenth Circuit held:

To exceed the "substantial burden" threshold, government regulation must significantly inhibit or constrain conduct or expression that

manifests some central tenet to a prisoner's individual beliefs; must meaningfully curtail a prisoner's ability to express adherence to his or her faith; or must deny a prisoner reasonable opportunities to engage in those activities that are fundamental to a prisoner's religion.

By not requiring that the burdened practice be "mandated" by the prisoner's religion as *Bryant* does, the Tenth Circuit broadened the scope of RFRA's protection. The district courts in other circuits are split on whether to follow the religiously "mandated" test or the religiously "motivated" test. *See Sasnett v. Sullivan*, 908 F.Supp. 1429 (W.D.Wis.1996), and cases cited therein.

F.3d at 949. Instead, the court found that the means provided by the defendants, including inter-faith Christian services, Pentecostal literature in the prison library, and a Pentecostal volunteer available to attend Bible study, sufficiently accomplished the mandate of the inmate's religion. *Id.*

Here, plaintiff contends that defendants are interfering with his observance of three Islamic religious practices: the congregational prayer of Jumu'ah, the worship within a chapel devoted to Allah, and Ramadan.

### a. Observance of Jumu'ah:

▮ On Fridays, Muslims observe a congregational prayer known as Jumu'ah. The plaintiff contends that the observance of Jumu'ah is a central tenet of Islamic religious belief and that to observe Jumu'ah, Muslims must pray in congregation. (Plaintiff's Opposition, 5:24–6:2, Exh. 1, Exh. 5). The plaintiff further contends that Friday prayer is a substitute for the pilgrimage to Mecca, and the teachings of Muhammad command a meeting after the prayer. (Opposition, Ex. 6). To support his contention that group prayer is required for Jumu'ah, plaintiff submits excerpts from the Koran (or Quaran) and the teachings of Muhammad. (Plaintiff's Opposition, 5:24–6:2, Exh. 1, Exh. 5).

Defendants assert that, like other forms of Islamic worship, Jumu'ah need not be observed congregationally in a chapel; and that on Fridays, "Muslims who are able to attend can gather together for a congregational prayer." (Brief 5:15–16; Omeira Decl., para. 21). Thus, if an inmate does not have access to a chapel, it does not impinge on his religious practice. (Brief 5:12–15; Omeira Decl., para. 20, 21). Moreover, defendants submit a schedule showing Jumu'ah prayer times in all five chapels at CSP–LAC.[7] (Exh. 5 and 6).

The plaintiff also submits numerous declarations from fellow Muslim inmates explaining how the policies at CSP–LAC deny him and them access to a chapel unless Imam Omeira or a volunteer spiritual leader is

present, and that on most Fridays, neither are present to observe Jumu'ah, causing the chapels to remain closed. Exhibit 2 to plaintiff's Opposition contains thirty-five identical declarations of plaintiff and various other Muslim inmates, which state:

> [T]HERE IS *NO* CORRECTIONAL OFFICER(S) ASSIGNED TO THE CHAPEL, ALLOWING THE MUSLIMS ACCESS TO THE CHAPEL AT THE STATED TIMES OF OMEIRA (MUSLIM CHAPLAIN) SCHEDUAL [sic] FOR US TO HAVE CLASSES. [¶] THE MUSLIMS *ARE NOT* ALLOWED IN THE CHAPEL UNLESS OMEIRA IS PHYSICALLY PRESENT PERIOD, TO ALLOW THE MUSLIMS IN THE CHAPEL AND TEACH SOME CLASSES OR UNLESS A MUSLIM VOLUNTEER IS PRESENT. THERE ARE NO MORE THAN THREE (3) MUSLIMES [sic] VOLUNTEERS AND THEY ONLY COME WHEN OMEIRA COMES ON THE PRISON GROUNDS AND/OR TO THE YARD.

Exhibit 9 to plaintiff's Opposition contains thirty-one nearly identical declarations of plaintiff and various other Muslim inmates, which state:

> Abdul–Wahab Omeira (MUSLIM CHAPLAIN) is not here at CSP–LAC twice a week to teach classes in the chapel, to ensure we have access to the chapel, etc. [¶] Omeira has not been present twice a week and/or once a week on a constant or consistent basis since he has been hired as the Muslim Chaplain. The Muslims have gone weeks & Months [sic] at time without going into the chapel, except occasionally on Fridays.

The plaintiff also submits declarations from numerous inmates calling into question Imam Omeira's ability to act as the spiritual leader of the Muslim inmates, and that the Muslim inmates had notified prison officials, through the filing of a group inmate grievance, that they did not believe Imam Omeira has been providing adequate services. (Exh.

(Pitocco Decl., para. 4–7).

---

**7.** There are five different security yards at CSP–LAC, each containing its own interfaith chapel.

3). While plaintiff does not contend that he and other Muslim inmates must congregate in a chapel for Jumu'ah, he explains that this is the only practical area to congregate, arguing that under prison regulations, only four people may be in a group in the yard at any given time. (Opposition 6:2–7:12, Exh. 2). The yard also does not present an atmosphere conducive to prayer. (Exh. 16). The plaintiff explains that in the day room, gatherings are also prohibited; moreover, Muslims cannot pray near nude bodies, and the day room also houses the showers. Cells are an equally inappropriate location for the observance of Jumu'ah, plaintiff argues, noting only two inmates are permitted in a cell at any given time.

On the basis of the evidence presented by both sides, it remains a material dispute whether the observance of Jumu'ah through congregational worship is a central tenet of the Islamic religion. If it is a central tenet, defendants must make a chapel reasonably available for plaintiff and other practicing Muslim inmates unless they can demonstrate a compelling governmental interest which would prevent the use of a chapel for Jumu'ah. Whether a chapel is, in fact, reasonably available on Fridays for worship by plaintiff and other Muslim inmates also remains a material disputed fact. Thus, defendants' motion for summary judgment should be denied on this claim.

### b. Muslim Worship in the Chapels:

Related to the problem of the congregational observance of Jumu'ah, plaintiff claims that he and other Muslim inmates are generally denied access to a chapel. In support of his claim that Muslims are required to worship in a chapel, plaintiff submits excerpts from the Koran, which commands that Muslims worship in a religious sanctuary. (Exh. 8). As mentioned, defendants contend that Muslim inmates may pray anywhere and do not need access to the chapel; but that, nevertheless, the schedule for the chapels provides adequate time for plaintiff and other Muslim inmates to worship. (Omeira Decl., para. 23). As with the Jumu'ah prayer, plaintiff contends that the schedule does not accurately represent the actual availability of

the chapels. (Opposition, 8:10–26). Again, plaintiff submits declarations indicating Imam Omeira is not present when scheduled and that the Muslim inmate religious leaders are not present often enough to allow him and other Muslim inmates access to the chapels. (Declarations attached as Exh. 9, quoted above). Because the access of plaintiff and other Muslim inmates to the chapels remains a material disputed fact, defendants' motion for summary judgment should be denied on this claim.

### c. Observance of Ramadan:

Both parties agree that a central tenet of the Islamic religion is the observance of the holy month of Ramadan, which requires adherents to fast and to eat kosher food. The celebration of Eid is a feast which marks the end of the month of Ramadan. The plaintiff, in Exhibit 14, submits thirty-one nearly identical declarations from him and other Muslim inmates, which state:

[W]e have never been served kosher food for the month of RAMADAN or EID (WE WERE SERVED KOSHER LAMB FOR THE FIRST OF EID OF 1995). Nor have the Muslims been able to observe the preparation of the food for Ramadan or EID. Other than the lamb served for the first of Eid of 1995 the Muslims have been forced to eat state prepared/cooked food by staff and non [sic] Muslim Inmates for Ramadan as well as Eid.

The defendants contend that they have served kosher food during Ramadan and Eid and have allowed designated inmates to observe the preparation of the food. (Omeira Decl., para. 26). The declarations plaintiff submits are sufficient to raise a material dispute whether defendants have provided plaintiff and other Muslim inmates a kosher diet during the month of Ramadan and for Eid. Thus, defendants' motion for summary judgment should be denied on this claim.

### d. Other Practices:

In his Opposition, plaintiff contends that defendants have discontinued their practice of allowing him and other Muslim inmates to keep Muslim literature, prayer rugs, and other religious articles or items in their cells.

(Opposition 14:17–25). The plaintiff does not, however, submit evidence showing that the possession in their cells of such articles or items is central to Islamic religious practice. The plaintiff further contends that Muslims are not allowed to eat pork, but that he and other Muslim inmates do not receive a pork alternative and that their meals arrive on trays contaminated by pork. (Opposition, 14:1–16). Again, plaintiff submits no evidence, through declaration or otherwise, supporting these contentions. Thus, to the extent plaintiff attempts to support his free exercise claim regarding these practices, his claim must fail and summary judgment should be granted to defendants on these claims.

## IV

### Equal Protection Claim

■ Apart from the free exercise of religion claims, plaintiff alleges that defendants have violated the equal protection clause of the Fourteenth Amendment by ongoing, unequal treatment between Muslim and Christian inmates, particularly with regard to access to the chapels. Because plaintiff's equal protection claim arises from the some of the same factual circumstances as his free exercise claim, we must first consider whether plaintiff may maintain an equal protection claim independent of RFRA.

Congress explicitly stated that the purpose of RFRA was to restore the compelling interest test to free exercise of religion claims. 42 U.S.C. § 2000bb(b)(1). The statute, by its terms, addresses only free exercise of religion claims, i.e., claims arising from an alleged "substantial burden" placed on religion by the government; it does not address equal protection claims arising from alleged unequal treatment of religious practices by the government. *See* 42 U.S.C. § 2000bb–1(a).

■ Under the equal protection clause, strict scrutiny applies to governmental action which discriminates against a suspect class or which interferes with a fundamental right.

*Kadrmas v. Dickinson Public Schools*, 487 U.S. 450, 457–58, 108 S.Ct. 2481, 2486–88, 101 L.Ed.2d 399 (1988). Subsequent to the enactment of RFRA, where plaintiffs invoke equal protection scrutiny based on their fundamental right to the free exercise of religion, the Third Circuit has held that the plaintiffs must show they received different treatment from other similarly situated individuals or groups. *Brown v. Borough of Mahaffey, Pa.*, 35 F.3d 846, 850 (3rd Cir. 1994) (citing *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)).

A similar disparate treatment analysis was applied by the Ninth Circuit in a pre-RFRA decision to an inmate's claim alleging that a prison prohibition on inmates' performance of Native American religious ceremonies violated the Fourteenth Amendment's equal protection clause.[8] *Allen v. Toombs*, 827 F.2d at 567. Quoting *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081–82, 31 L.Ed.2d 263 (1972), the Ninth Circuit, in *Allen*, held:

> [A]n inmate who is an adherent of a minority religion must be afforded "a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts."

*Id.* Applying this standard, the Ninth Circuit found that the defendants had provided reasonable accommodation for Native American inmates in the disciplinary segregation unit to practice their religion by allowing weekly access to an outside pipe bearer when one was available. The court reasoned that because the prison administration was not under an affirmative duty to provide each inmate with the spiritual counselor of his choice, the administration had made a good faith accommodation of the inmates' rights in light of practical considerations. *Allen v. Toombs*, 827 F.2d at 568–69.

Here, under the rationales of the Ninth Circuit in *Allen* and the Third Circuit in *Brown*, to prevail on his equal protection claim, plaintiff must show that under CSP-LAC's policies, the practice of Islam was not

---

8. Native American inmates also challenged the prison's prohibition against inmate spiritual leaders performing the pipe ceremony under the free exercise clause. As in post-RFRA cases, the Ninth Circuit analyzed the free exercise claim separately from the equal protection claim.

accommodated equally with the practice of Christianity, and that any differences were not reasonable in light of practical considerations. While plaintiff's complaint and opposition brief allege unequal treatment, particularly in terms of the access to the prison chapels for religious services, plaintiff presents no evidence tending to show that Muslim inmates are afforded less reasonable opportunities to practice their religion than Christian inmates. Accordingly, summary judgment should be granted to defendants on the plaintiff's claims under the equal protection clause.

## V

### Constitutional Violations From CSP–LAC's Opening To November 1993

■ Plaintiff alleges that from CSP–LAC's opening in February of 1993,[9] to November of 1993, defendants did not provide Muslim inmates opportunities to practice the Islamic religion comparable to Christian inmates. Plaintiff further alleges that inequities included the lack of a paid Islamic spiritual leader, while there was a paid Christian chaplain, and limited access for Muslim inmates to the prison chapel, while Christian inmates had access to the chapel five days per week. (Complaint, par. III). Because these inequities no longer exist, plaintiff's only remedy for these alleged violations of plaintiff's equal protection rights would be monetary relief. *City of Los Angeles v. Lyons,* 461 U.S. 95, 101, 103 S.Ct. 1660, 1664–65, 75 L.Ed.2d 675 (1983); *Nelsen v. King County,* 895 F.2d at 1250.

Although the former warden of CSP–LAC and two associate wardens are defendants, plaintiff does not allege, and does not offer evidence showing, any specific acts for which these defendants were responsible that could provide a basis for monetary relief. *Leer v. Murphy,* 844 F.2d at 633; *Johnson v. Duffy,* 588 F.2d at 743. Further, to the extent that plaintiff alleges an equal protection claim based on differential treatment between

Muslim and Christian inmates, defendants submit evidence that Imam Omeira was hired on April 10, 1993, and at that time began developing and implementing CSP–LAC's Islamic religious programs. (Omeira Decl., para. 6–9, 13–17). Imam Omeira's declaration indicates that CSP–LAC made reasonable accommodations for the practice of the Islamic religion from April through November of 1993. *Allen v. Toombs,* 827 F.2d at 567. Without any evidence from plaintiff indicating that any lapses in defendants' accommodation of Muslim inmates' religious practices were not reasonably related to the problems inherent in establishing religious programs at a new facility, plaintiff has not shown preferential treatment of Christian inmates by defendants. Therefore, plaintiff's equal protection claims must fail and summary judgment should be granted for defendants on these claims.

## VI

### Pendant State Law Claims

■ The plaintiff also alleges that defendants have violated his rights under Article 1, Sections 1 and 4 of the California Constitution. (Complaint, par. III). Article 1, Section 1, provides that all people have the inalienable rights of "enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing and obtaining safety, happiness, and privacy." (California Constitution, Article 1, Section 1, West, 1983). The plaintiff does not articulate in either the complaint or his Opposition the manner in which defendants have violated these rights. Accordingly, this claim should be dismissed. Fed.R.Civ.P. 8. Article 1, Section 4, provides: "Free exercise and enjoyment of religion without discrimination or preference are guaranteed." (California Constitution, Article 1, Section 4, West, 1983). As the analysis of a free exercise claim under state and federal law is largely the same, *Vernon v. City of Los Angeles,* 27 F.3d 1385, 1392 (9th Cir.1994), defendants'

---

**9.** Plaintiff was transferred to CSP–LAC on April 14, 1995; and thus, has no standing to raise claims prior to his imprisonment. *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975); *Wedges/Ledges of California, Inc. v. City of Phoenix,* 24 F.3d 56, 62 (9th Cir.1994).

452

motion for summary judgment on this claim should be denied for the reasons discussed above.

## RECOMMENDATION

For the foregoing reasons, IT IS RECOMMENDED that the Court issue an Order:

(1) APPROVING and ADOPTING the Report and Recommendation;

(2) GRANTING, in part, and DENYING, in part, defendants' motion for summary judgment, as follows: Summary Judgment is granted for defendants on all claims except plaintiff's claims for injunctive relief regarding the alleged violations of the free exercise clause of the First Amendment and Article I, Section 4, of the California Constitution, in the observance of Jumu'ah, reasonable access to the chapel for worship, and the observance of Ramadan.

DATE: March 12, 1996.